IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.   25-cr-25-RMR

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.  ADARRIN DARNELL SMITH,

      Defendant.

## INFORMATION

The United States Attorney charges:

### COUNT 1
Conspiracy to Commit Offense

During all times relevant to this Information:

**The Defendant, Related Entities, and Relevant Persons**

    1.    Defendant ADARRIN SMITH was a resident of Florida.

    2.    New Kingdom Financial Inc. was established as a corporation under the laws of Florida in June 2019, with SMITH listed as incorporator and registered agent.

    3.    Branded Asset Management Group LLC was a limited liability company established under the laws of Nevada in May 2019. SMITH was, among other titles, Chief Operating Officer of Branded Asset Management Group.

    4.    Chrisheena McGee a/k/a Christina Marius resided in Louisiana until

in or around May 2019 and in Texas from in or around June 2019 until at least in or around July 2021. Between 2019 and 2021, she held herself out as operating the following businesses, among others: (a) Branded Asset Management Group; (b) Gold Brand Trust; (c) First Allegiance Capital; (d) KC Gull Industries Trust; and (e) Champion Lending (collectively, "McGee's companies").

5. Sandra Bacon resided in Fredericksburg, Virginia. Bacon was a director and principal for First Title, Inc. and The Bacon Group Inc. (incorporated in Virginia in 2004). From at least May 2019 through at least March 2021, Bacon acted as escrow agent for McGee's companies and provided other financial services, such as paying sales commissions.

6. Entities represented by brokers, agents, investors, and principals entered into agreements with SMITH, McGee, and Bacon for loans from McGee and her companies in exchange for payment of an advance fee to Bacon. As escrow agent for McGee's companies, Bacon collected advance fees from agents or investors ("Victims") of the entities seeking loans. Some Victims were individuals, while others were groups of entity investors. Bacon promised to hold Victim advance fees in escrow until the loan closed or the advance fees were returned.

**The Conspiracy**

7. From in or around May 2019, and continuing thereafter until at least in or around July 2020, in the State and District of Colorado and elsewhere, the defendant SMITH, did knowingly and voluntarily, with the intent to further the objects of the conspiracy, combine, conspire, confederate, and agree with McGee,

Bacon, and others known to the United States Attorney, to commit offenses against the United States, that is, to violate 18 U.S.C. § 1343, by devising, intending to devise, and participating in a scheme and artifice to defraud and to obtain money and property from Victims by means of materially false and fraudulent presenses, representions, and promises.

**Manner and Means**

8. Acting interdependently, the manner and means by which SMITH and his co-conspirators sought to accomplish the objects of the conspiracy included, among other things, the following:

9. McGee, Bacon, and SMITH falsely represented that McGee and her businesses had sources of money available to obtain large capital loans for entities seeking the loans after Victims deposited a lesser amount as an advance fee to an escrow account managed by Bacon, and that McGee and Bacon would safely keep the money in escrow until the loan was funded.

10. McGee and SMITH falsely represented to entities seeking loans that McGee's companies had access to sources of money to fund loans of up to $150,000,000. McGee and SMITH falsely represented that they would obtain the loan money if Victims would pay an advance fee—often about 10% of the total loan amount—into an escrow account managed by Bacon.

11. SMITH, McGee, and Bacon made false representations to influence Victims to send advance fees as well as to cause Victims to delay demanding return of their advance fees.

12. McGee and SMITH made phone calls and provided commitment letters, emails, and text messages to Victims and entities seeking loans reassuring them that McGee's companies were committed to providing the full loan funding by a certain date and falsely representing, among other things, that advance fees would remain in escrow until closing and applied to the total loan amount at that time.

13. When Victims and entities seeking loans sought reassurance from SMITH that advance fees remained in escrow, SMITH falsely represented that advance fees remained in escrow and were available to return upon request.

14. At the direction of McGee, SMITH made phone calls to clients of McGee's companies who had not been paid to reassure the clients that they would, in fact, be paid and that their advance fees remained safely in escrow.

15. To conceal their fraud, lull Victims into a false complacency, and delay lawsuits, McGee, Bacon, and SMITH falsely represented to Victims and entities seeking loans that they had secured new funding sources or had money on hand sufficient to fund outstanding loans or return advance fees.

16. The scheme involved phone calls and emails that resulted in interstate wires, including to Victims in Colorado, as well as wires of advance fees from Victims in Colorado to bank accounts outside of Colorado.

17. Initially, after Victims paid advance fees, their money was not held in escrow but instead was used for purposes not allowed by the escrow agreements, such as to purchase properties, make business loans, and pay salaries and

commissions to employees and brokers so that McGee could start a residential and commercial lending business, and to purchase financial instruments called standby letters of credit, so McGee could try to leverage them to obtain the loans she and SMITH had promised. Bacon—despite falsely promising and knowing her obligation to hold the money in escrow—initiated these wire transfers.

18.     Smith's role included making phone calls, executing contractual agreements, and sending emails wherein he falsely represented that Victims would receive loans and that their advance fees would and did remain in escrow, both to induce Victims to pay advance fees and to delay Victims from demanding return of their advance fees.

19.     Between in or about March 2019 and November 2019, SMITH received at least 47 payments to himself or New Kingdom Financial for his work at Branded Asset Management Group totaling approximately $333,150, and a family member received another 16 payments totaling approximately $23,085.24. The source of these payments were advance fees paid by Victims to Bacon.

20.     SMITH received some payments directly from an entity that processed payroll expenses for McGee's companies and others as a result of asking Bacon to advance him funds.

21.     As a result of false representations made by McGee, Bacon, and SMITH, and other accomplices, at least eleven Victims (Victims 1-11) entered into escrow agreements agreeing to pay approximately $14,932,240.75 in advance fees:

| Victim | Date(s) of Fee Payment (on or about) | Total Advance Fees Paid |
|---|---|---|
| 1 | May 15, 2019 | $ 1,500,000 |
| 2 | May 31, 2019 - June 4, 2019 | $ 1,088,502.74 |
| 3 | June 3, 2019 | $ 1,000,000 |
| 11 | July 1, 2019 | $131,238 |
| 4 | August 30, 2019 | $ 500,000 |
| 5 | December 3 - 9, 2019 | $ 1,252,500 |
| 6 | March 11, 2020 | $ 450,000 |
| 7 | June 16, 2020 | $ 2,000,000 |
| 8 | July 9, 2020 | $ 300,000 |
| 9 | June 10, June 17, and September 2, 2020 | $ 2,210,000 |
| 10 | August 20, 2020 - November 4, 2020 | $ 4,500,000 |
| **Totals** | **May 15, 2019 - November 4, 2020** | **$ 14,932,240.74** |

**Overt Acts**

22. In furtherance of the conspiracy, and to accomplish its objectives, at least one of the co-conspirators committed, or caused to be committed, in the District of Colorado and elsewhere, at least one of the following overt acts, among others:

23. On or about March 15, 2019, SMITH signed a letter stating that he was a board member of Branded Asset Management Group and would serve as "Chief Sales Officer" and "signer for escrow."

24. On or about April 3, 2019, McGee emailed Bacon and copied SMITH to outline McGee's and SMITH's roles with Branded Asset Management Group.

25. On or about May 9, 2019, SMITH, McGee, and Bacon directed Victim 1 to transmit its advance fee of $1,500,000 to a First Title bank account controlled by Bacon, which Victim 1 did on or about May 15, 2019.

26. On or about May 17, 2019, Bacon transferred approximately $368,340.08 to Company 1, a limited liability company registered in Florida, for the

purchase of a property in Florida. The source of funds for this transfer was Victim 1's advance fee.

27. On or about May 18, 2019, McGee emailed Bacon, SMITH, and others that Branded Asset Management Group had "moved into the funding phases," which was a reference to the mortgage loan transfer on May 17, 2019.

28. On May 19, 2019, Bacon replied to all parties on McGee's May 18, 2019 email that Branded Asset Management Group had entered "[t]ruly exciting times" and "now the sky is the limit."

29. On or about May 28, 2019, Bacon wired approximately $600,000 to Company 2 for the purchase of financial instruments.

30. On or about May 29, 2019, SMITH electronically signed a "Commitment Letter" that stated that Branded Asset Management Group would provide an approximately $60 million loan by July 15, 2019 if Victim 2 paid a $1,088,502.74 advance fee.

31. On or about May 30, 2019, Bacon electronically signed an escrow agreement with Victim 2 that falsely stated that Bacon would hold Victim 2's advance fee in escrow in accordance with the escrow agreement.

32. On or about May 31, 2019, SMITH signed a "Commitment Letter" that stated that Branded Asset Management Group would provide a $235,000,000 commercial loan to Victim 3, with an initial loan disbursement to be provided within 35-45 days of payment of a $1,000,000 advance fee.

33. On or about May 31, 2019, SMITH and Bacon each electronically

7

signed an escrow agreement with Victim 3 that falsely stated that Bacon would hold Victim 3's advance fee in escrow in accordance with the escrow agreement.

34.  On or about June 17, 2019, Branded Asset Management Group received a document purporting to be a "Standby Letter of Credit" issued by Deutsche Bank.

35.  On or about June 26, 2019, McGee emailed Victim 2 and copied SMITH and falsely stated in the email that Branded Asset Management Group had "blocked funds" in place to fund Victim 2's loan.

36.  On or about July 11, 2019, McGee emailed Victim 1 and copied SMITH.  The email falsely stated that funding had been delayed by problems obtaining a "completion/performance bond" and "issues surrounding Deutsche Bank," but that she would return Victim 1's advance fee within the next 2-3 business days because she would receive a new Standby Letter of Credit from a London bank, which McGee stated would allow release of the funds held in escrow.

37.  On or about August 5, 2019, SMITH emailed Victim 11, located in the state of Washington, that Victim 11's loan funding would be pushed out 30 days but that Branded Asset Management Group would cover expenses if Victim 11 needed a "hard money loan" in the meantime.

38.  On or about September 20, 2019, SMITH electronically signed a letter that was sent to victims that falsely stated that loan closings were delayed based on the closure of a CPA firm used by Branded Asset Management Group, inclement weather in Houston, and an issue with implementing a new in-house financing

software. The letter promised that funds would be deposited in 5-7 business days.

39. In or around October 2019, in a letter to Victim 3, SMITH apologized for the delay in funding, which he falsely attributed to the need to complete Branded Asset Management Group's "internal funding cycle," but stated that Victim 3's loan funds would be "released" within 10 days upon completion of the funding cycle.

40. On or about October 2, 2019, SMITH falsely promised Victim 1 during a phone call that Branded Asset Management Group had available money in its trust account to repay Victim 1's advance fees.

41. In or around November 2019, the conspirators provided a "Bank Proof of Funds" document to Victim 3 that falsely represented that SMITH had a bank account balance exceeding $50 million to reassure Victim 3 it would receive its first installment of loan funding.

42. On or about December 3, 2019, SMITH directly withdrew money from a bank account in the name of one of McGee's companies.

43. On or about June 17, 2020, when Victim 3 asked for confirmation that Bacon still held its advance fee in escrow, Bacon signed and dated a document falsely affirming that $1,000,000 paid into her escrow account by Victim 3 on or about June 3, 2019 was being held in escrow.

44. On or about July 16, 2020, McGee provided a Commitment Letter and Letter of Pre-Approval to Victim 1 that stated that Victim 1's loan would now be funded by 1st Allegiance Capital Group, a subsidiary of GoldKey Capital, LLC.

45. On various dates, Bacon told SMITH during phone calls that she had transferred Victim advance fees to McGee for the benefit of McGee and McGee's family members, to pay salaries and commissions related to McGee's companies, and to purchase financial instruments.

46. On or about the dates listed below, each constituting a separate overt act, McGee, Bacon, and SMITH caused the following wires to be transmitted, and aided and abetted the same:

|    | On or about date of payment | Amount | Bank Account Recipient |
|----|-----------------------------|--------|------------------------|
| a. | 5/15/2019 | $1,500,000 | First Title |
| b. | 6/3/2019  | $1,000,000 | First Title |
| c. | 12/3/2019 | $626,250   | First Title |
| d. | 12/9/2019 | $626,250   | First Title |

All in violation of Title 18, United States Code, Section 371.

## NOTICE OF FORFEITURE

47. The allegations contained in Count 1 are re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Sections 982(a)(7) and 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

48. Upon conviction of the violation of Title 18, United States Code, Section 371, alleged herein, the defendant, ADARRIN SMITH, shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 982(a)(7) and 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all rights, title, and interest in all property constituting and derived from any proceeds

obtained directly and indirectly as a result of such offense or offenses, including, but not limited to a money judgment in the amount of proceeds obtained by the conspiracy and scheme, and by the defendant.

49. If any of the property described above, as a result of any act or omission of the defendants:

      a. cannot be located upon the exercise of due diligence;

      b. has been transferred or sold to, or deposited with, a third party;

      c. has been placed beyond the jurisdiction of the Court;

      d. has been substantially diminished in value; or

      e. has been comingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

    MATTHEW T. KIRSCH
    United States Attorney

    By: *s/ Craig Fansler*
    Craig Fansler
    Assistant United States Attorney
    United States Attorney's Office
    1801 California Street, Suite 1600
    Denver, Colorado 80202
    Telephone: (303) 454-0100
    Fax: (303) 454-0405
    E-mail: Craig.Fansler2@usdoj.gov
    Attorney for the United States

By: *s/ Bryan Fields*
Bryan Fields
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California St., Ste. 1600
Denver, CO 80202
Telephone: 303-454-0100
E-mail:  Bryan.Fields3@usdoj.gov
Attorney for Government